UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**TOREZ RILEY,**<br><br>   **Defendant.** | Case No. 25-mj-00154 (MAU) |

**GOVERNMENT'S SUPPLEMENTAL BREIF IN SUPPORT OF MOTION TO DISMISS COMPLAINT WITHOUT PREJUDICE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this supplemental brief in support of its Motion to Dismiss Complaint Without Prejudice. (ECF No. 6). Dismissal with prejudice is not warranted where, as here, the government did not seek dismissal for tactical gain or to or to harass the defendant by rebringing the case under more advantageous circumstances. Similarly, the Defendant's motion to expunge his arrest in this case should be summarily denied as the defendant has failed to proffer any statutory basis for, or any "extraordinary circumstances" justifying, his request for equitable relief. Accordingly, the Court should deny the defendant's motion to dismiss this case with prejudice and to expunge his arrest.

**Procedural History**

On August 18, 2025, members of the Metropolitan Police Department ("MPD") arrested Torez Riley for illegally possessing two loaded ghost guns. On August 20, 2025, the Honorable Moxila A. Upadhyaya authorized an arrest warrant and criminal complaint charging Mr. Riley with violating 18 U.S.C. § 922(g)(1) for possessing those ghost guns. The defendant is currently on probation in Maryland through March 2027 for a prior illegal firearms conviction from February 2024. On August 21, 2025, at Mr. Riley's initial appearance, the government sought Mr.

1

Riley's detention under 18 U.S.C. § 3142(d), which requires the Court to hold a defendant for up to ten days if the offense was committed while the defendant was on probation for any offense under State law. The purpose of this temporary detention is to provide the government the opportunity to "notify the appropriate court, probation or parole official, or State or local law enforcement official" of the arrest. *Id.* The government also moved for detention under 18 U.S.C. § 3142(f)(1)(E) because the defendant was charged with a felony involving the possession of a firearm. The Court granted the motion for temporary detention and scheduled a detention hearing for August 25, 2025.

On August 21, 2025, when the United States Attorney personally reviewed video of the arrest, she immediately directed that the case should be dismissed and that the evidence of the arrest should be transmitted to authorities in Maryland. After authorities in Maryland issued an arrest warrant for the defendant's probation violation, the government filed a motion to dismiss the criminal complaint against Mr. Riley. At a hearing on that motion, the Court granted the government's motion to dismiss the complaint against Mr. Riley without prejudice. Following the defendant's oral motion that the complaint be dismissed with prejudice and the defendant's arrest expunged, the court ordered the government to brief both issues. The Court ordered the government to submit any briefing by August 29, 2025.

## Argument

I. **Dismissal with Prejudice is not Warranted Because the Government did not Seek Dismissal to gain a Tactical Advantage or to Harass the Defendant by Rebringing the Case Under More Advantageous Circumstances.**

Federal Rule of Criminal Procedure 48(a) provides that the "government may, with leave of court, dismiss an indictment, information or complaint." The Supreme Court has explained that the "'principle object of the leave of court requirement' has been understood to be a narrow one

2

— 'to protect a defendant against prosecutorial harassment . . . when the [g]overnment moves to dismiss an indictment over the defendant's objection.'" *United States v. Fokker Services B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977)). Therefore, a court reviews the government's motion under Rule 48(a) "primarily to guard against the prospect that dismissal is part of a scheme of prosecutorial harassment of the defendant through repeated efforts to bring—and then dismiss—charges." *Fokker Services*, 818 F.3d at 742.

As a general matter, Rule 48(a) only allows the court to reject the government's motion to dismiss without prejudice in "exceptional" cases due to the "strong presumption in favor of a no prejudice dismissal[.]" *United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015). *See also, e.g.*, *United States v. Trump*, 757 F. Supp. 3d 82, 83 (D.D.C. 2024) ("When a prosecutor moves to dismiss an indictment without prejudice, there is a strong presumption in favor of that course. A court may override the presumption only when dismissal without prejudice would result in harassment of the defendant or would otherwise be contrary to the manifest public interest.") (citations and quotation marks omitted). The question of whether to dismiss a case pursuant to Rule 48(a) with, or without, prejudice turns on whether the dismissal itself is being sought for an improper purpose, such as "to gain a tactical advantage" or to bring the case again under more advantageous circumstances. *United States v. Pitts*, 331 F.R.D. 199, 203 (D.D.C. 2019); *see also Rinaldi*, 434 U.S. at 30 (noting that "[t]he salient issue" in deciding whether to permit termination of prosecution under Fed. R. Crim. P. 48(a) is whether the government's "efforts to terminate the prosecution [] were tainted with impropriety"). "The key factor in a determination of prosecutorial harassment is the propriety or impropriety of the [g]overnment's efforts to terminate the prosecution—the good faith or lack of good faith of the [g]overnment in moving to dismiss." *United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1982). *See also United States v. Hayden*, 860

3

F.2d 1483, 1487 (9th Cir. 1988) ("A fundamental consideration in addressing the propriety of a prosecutor's [Fed. R. Crim. P. 48(a)] dismissal motion is whether the motion is made in 'good faith.'"). "It is only when those considerations overcome the presumption that the public interest favors a dismissal without prejudice, that a dismissal shall be ordered with prejudice." *United States v. Madzarac*, 678 F. Supp. 3d 42, 48 (D.D.C. 2023).

Where the government has sought dismissal without prejudice, courts instead have granted dismissal with prejudice only where the government has sought to dismiss a case to obtain a tactical advantage, harass the defendant, or otherwise rebring the case at a more advantageous time for the government. For example, in *Pitts*, 331 F.R.D. at 204, the court denied the government's request to dismiss without prejudice where the government failed to timely seek DNA testing and sought to salvage the case by dismissing without prejudice with hopes to rebring the prosecution once DNA test results were received. Specifically, the government advised the court that it was seeking dismissal "without prejudice in order to get the [DNA] tests done." *Id.* at 202. Because the purpose of the dismissal without prejudice "was clearly tactical, to better position the government to try this case, which is clearly prohibited under D.C. Circuit precedent," the court dismissed the case with prejudice. *Id.* at 205.

In *United States v. Poindexter*, 719 F. Supp. 6, 10 (D.D.C. 1989), the court explained that dismissal with prejudice is warranted when allowing reprosecution "would result in harassment of the defendant or would otherwise be contrary to the manifest public interest." In *Poindexter*, the court declined to dismiss two counts of an indictment without prejudice where the government was seeking to gain a tactical advantage by preserving the possibility of reprosecuting the defendant at a time when he would not need access to classified documents. *Id.* at 12 n.18. Similarly, in *United States v. Fields*, 475 F. Supp. 903, 905-08 (D.D.C. 1979), the court dismissed

4

an indictment with prejudice where the government indicted the defendant in order to coerce her cooperation in another case despite knowing that its key witness—without whom the government could not prosecute the defendant—was not credible. In *United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984), the Tenth Circuit held that dismissal with prejudice was warranted where the government sought dismissal solely because it was dissatisfied with the state of the investigation and charges and the defendant was prepared to proceed to trial. And in *Salinas*, 693 F.2d at 353, the Fifth Circuit dismissed an indictment with prejudice on grounds that the government was engaging in harassment and improper maneuvering, when the government sought to dismiss a case on the first day of trial because it was unhappy with the jurors who had been selected.

The present case is readily distinguishable. This is not a case where the government is requesting dismissal without prejudice in an attempt to induce a defendant's cooperation in another case, nor is it a case in which the government, for tactical reasons, has sought to defer a prosecution. Rather, here, after careful evaluation, the government moved to dismiss the complainant against defendant Riley without prejudice, which is the ordinary course, based on the government's determination that proceeding with this case presented serious Fourth Amendment litigation risk. Because the dismissal in this case is neither being requested in bad faith nor in an effort to harass the defendant, and because the government has not sought dismissal to obtain a tactical advantage or otherwise rebring the case at a more advantageous time, dismissal with prejudice is not appropriate.

II. **The Court Should Deny the Defendant's Request to Expunge His Arrest Because he Has Failed to Set Forth the Extraordinary Circumstances Required to Justify his Request for Equitable Relief.**

Defendant's motion to expunge his arrest in this case should be summarily denied. Defendant fails to cite any statutory basis for, or any "extraordinary circumstances" justifying, his request for equitable relief.

"The power to order expungement is part of the general power of the federal courts to fashion appropriate remedies to protect important legal rights." *United States v. Archer*, Criminal No. 07-0029, 2012 WL 5818244, at *1 (D.D.C. Nov. 13, 2012). "Before expunging a criminal record, the Court must find, after examining the particular facts and circumstances of the case, the remedy is necessary and appropriate in order to preserve basic legal rights." *United States v. Davis*, No. CR. 342-72, 2006 WL 1409761, at *2 (D.D.C. May 23, 2006). In the absence of an enabling statute, a federal court's jurisdiction to hear motions to expunge convictions or arrests is limited to "the exercise of its inherent or equitable powers." *United States v. Hall*, Criminal No. 11-253-04, 2020 WL 1286386, at *2 (D.D.C. Mar. 18, 2020). The "general rule" is that "expungement of an arrest record is appropriate when serious governmental misbehavior leading to the arrest, or unusually substantial harm to the defendant not in any way attributable to him, outweighs the government's need for a record of the arrest." *Doe v. Webster*, 606 F.2d 1226, 1231 (D.C. Cir. 1979).

As an initial matter, the defendant has not cited any statutory basis to support his request for expungement. Indeed, the D.C. Circuit has not recognized a "'standalone right to the expungement of government records.'" *United States v. Douglas*, 282 F. Supp. 3d 275, 278 (D.D.C. 2017) (quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 536 (D.C. Cir. 2015)). When a court has exercised its inherent equitable power to order expungement, it has been

6

due to "either a lack of probable cause coupled with specific circumstances, flagrant violations of the Constitution, or other unusual and extraordinary circumstances." *Doe*, 606 F.2d at 1230; *see also United States v. Blackwell*, 45 F. Supp. 3d 123, 124 (D.D.C. 2014) ("Absent a statutory basis authorizing expungement, courts have granted motions to expunge only in extreme circumstances, such as in cases involving flagrant constitutional violations.").

As former Chief Judge Howell has explained:

Absent any statutory basis for expungement, the D.C. Circuit has held that courts nonetheless "have the inherent, equitable power to expunge arrest records . . . 'when that remedy is necessary and appropriate in order to preserve basic legal rights.'" *Livingston v. United States*, 759 F.2d 74, 78 (D.C. Cir. 1985) (quoting *Sullivan v. Murphy*, 478 F.2d 938, 968 (D.C. Cir. 1973)); *see also Doe v. Webster*, 606 F.2d 1226, 1231 n.8 (D.C. Cir. 1979) . . . .

As the D.C. Circuit has recently explained, "expungement is a potentially available remedy for legally cognizable injuries." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 536–538 (D.C. Cir. 2015). In other words, while no "nebulous right to expungement of government records" is available, even for "government records that are inaccurate, were illegally obtained, or are 'prejudicial without serving any proper purpose,'" expungement may be an appropriate remedy where a violation of an established legal right has occurred or is imminent. *Id.* at 538 (quoting *Chastain*, 510 F.2d at 1236). Thus, expungement of a criminal record may be an appropriate exercise of equitable powers when the criminal record involved "either a lack of probable cause coupled with special circumstances, flagrant violations of the Constitution, or other unusual and extraordinary circumstances." *Webster*, 606 F.2d at 1230. Examples of such "extraordinary circumstances" provided by the D.C. Circuit include criminal records arising from prosecutions marred by entrapment, misleading law enforcement testimony or incorrect legal advice or predicated on a statute subsequently declared unconstitutional. Id. at 1230 n.11. "The general rule which emerges from the cases is that expungement of an arrest record is appropriate when serious governmental misbehavior leading to the arrest, or unusually substantial harm to the defendant not in any way attributable to him, outweighs the government's need for a record of the arrest." *Id.* at 1231 . . . .

In short, no "standalone right to expungement of government records" is recognized in this Circuit. *Abdelfattah*, 787 F.3d at 536. Instead, a prerequisite for obtaining this equitable remedy is a claimed violation of a well-established statutory or constitutional right. *Id.* at 537. Merely citing to the fact that a criminal record may foreclose or present difficulties in finding employment opportunities does not meet the fundamental prerequisite of setting out a legally cognizable claim to vindicate

7

>rights secured by the Constitution or by statute, for which claim expungement may be appropriate relief.

*Douglas*, 282 F. Supp. 3d at 277–78.

The defendant contends that the court should exercise its equitable powers to expunge his arrest here because his arrest was unlawful. However, the circumstances surrounding the defendant's arrest are distinguishable from the "flagrant constitutional violations" that have resulted in courts exercising their inherent equitable power to expunge an arrest. In *Tatum v. Morton*, 562 F.2d 1279, 1285 (D.C. Cir. 1977), the district court expunged the arrests of attendants at a peaceful Quaker prayer vigil outside of the White House because the arrests violated the First Amendment. In *Sullivan v. Murphy*, 478 F.2d 938, 968-69 (D.C. Cir. 1973), the D.C. Circuit expunged the mass arrests of May Day protesters of U.S. military involvement in Southeast Asia, "where the police could not have furnished evidence of probable cause if a judicial hearing had been held promptly after apprehension." In *United States v. McLeod*, 385 F.2d 734, 749-50 (5th Cir. 1967), the Fifth Circuit expunged arrest records of and ordered the return of fines collected from a group of civil rights workers who had been arrested and convicted in state courts in an effort to disrupt a voter registration drive. In *Bilick v. Dudley*, 356 F. Supp. 945, 949, 953 (S.D.N.Y. 1973), the court expunged a mass arrest that violated the First Amendment because the arrests were made by police to harass a group due to their political beliefs. In *Hughes v. Rizzo*, 282 F. Supp. 881, 882-83, 885 (E.D. Pa. 1968), the court expunged arrest records that were the result of a campaign by local police to discourage youths from congregating in a public park, where police conducted mass arrests but did not initiate criminal proceedings. And in *Wheeler v. Goodman*, 306 F. Supp. 58 (W.D.N.C 1969), *vacated on other grounds*, 401 U.S. 987 (1971), the court expunged municipal arrest records upon a showing that police had committed repeated Fourth Amendment violations while enforcing a state vagrancy law that the court found

unconstitutionally overbroad.  The court explained that while "[we] do not hold that expunction is appropriate every time a defendant is acquitted or released without prosecution . . . on the facts of this case, including the youth of the plaintiffs, their innocence of any crime, the extreme misbehavior of the police in making arrests without probable cause, and the absence of any benefit to society in the maintenance of the arrest records," expungement was warranted.  *Id.* at 66.

Here, there is no question that police had probable cause to arrest the defendant for illegal firearms possession.  Indeed this Court found that there was probable cause to charge this defendant with this crime.  Officers recovered two loaded ghost guns from the defendant's satchel, weapons the defendant knew he was prohibited from possessing given that he is currently on supervision through March 2027 for a prior illegal firearms conviction in Maryland from February 2024.  One of the firearms was equipped with a high-capacity magazine and the other firearm was equipped with a Holosun sight.  And the defendant possessed both of these loaded ghost guns while he was walking into a busy grocery store full of shoppers on a Monday night.  Unlike the cases discussed above, the defendant here was, in fact, committing a crime when he was arrested.

Assuming *arguendo* that the stop in this case violated the Fourth Amendment, any constitutional violation was not so flagrant as to justify expungement of the defendant's arrest records.  This is because the stop was based on officers' articulable belief that the defendant was armed.  Here, MPD officers were patrolling an area where they had previously made numerous firearms arrests when they observed the defendant look at their vehicle, grab the upper strap of his black satchel and pull the satchel slightly to the left and closer to his body, away from officers.  The officers understood this movement by the defendant to be a "security check," a movement designed to make sure that a firearm is secure and not showing.  When the officers made a U-Turn in their vehicle to continue observing the defendant, they saw the defendant look back at their

9

vehicle again before turning onto 4th Street NE, walk north, and enter a Trader Joe's grocery store. Based on the officers' training, knowledge, and experience in conducting investigations of individuals carrying illegal firearms, officers believed that the defendant's actions were consistent with that of an individual concealing an illegal firearm. The officers were also aware that individuals frequently use crossbody satchels similar in size to that worn by the defendant to carry illegal firearms and additionally observed that the satchel looked heavy. Viewing these facts "through the eyes of a reasonable and cautious officer on the scene, whose insights are necessarily guided by the officer's experience and training," explains why the officers (correctly) believed that the defendant was carrying a firearm and why they believed they had a basis to conduct a protective pat down of the defendant's bag. *See, e.g.*, *United States v. Santillan*, 902 F.3d 49, 58 (2d Cir. 2018) (explaining that "contextual considerations such as the fact that the stop occurred in a high crime area factor into a reasonable-suspicions analysis, and the officers' assessment of an individual's nervous or evasive behavior is pertinent in establishing reasonable suspicion"). Because the defendant's arrest did not lack probable cause, was not the result of what courts have found to be a *flagrant* violation of the Constitution, or the result of other unusual and extraordinary circumstances, the defendant has failed to establish a legally sufficient basis to justify expungement of the records of his criminal conviction in this case. *Doe*, 606 F.2d at 1230.

Further, the government has a legitimate need to maintain records of arrests and convictions. In this Circuit, when assessing whether to invoke its inherent authority to grant a motion for expungement of an arrest record, the Court considers whether "serious governmental misbehavior leading to the arrest, or unusually substantial harm to the defendant not in any way attributable to him, outweighs the government's need for a record of the arrest." *United States v. Davis*, No. CR 342-72, 2006 WL 1409761, at *2 (D.D.C. May 23, 2006) (citations omitted). This

Circuit is clear that the government has a "legitimate need for maintaining criminal records in order to efficiently conduct future criminal investigations." *Doe*, 606 F.2d at 1243. "Retaining and preserving arrest records serves the important function of promoting effective law enforcement" and serves the "compelling public need for an effective and workable criminal identification procedure." *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977) (quotation omitted); *see also United States v. Woods*, 313 F. Supp. 3d 197, 200 (D.D.C. 2018) ("The government has both the statutory authority to maintain criminal records and a demonstrated need to do so in order to conduct future criminal investigations efficiently."). Retaining criminal records "aids in effective law enforcement," and maintaining records of convictions "helps preserve uniform sentencing under the United States Sentencing Guidelines" because the sentencing ranges rely in part on a defendant's past criminal history. *United States v. Salleh*, 863 F. Supp. 283, 284 (E.D. Va. 1994). As a result, expungements of criminal records are rare, without authorizing statute or extraordinary circumstances. "[R]elief usually is granted only in extreme circumstances, the finding of which requires a balancing of the equities between the right of privacy of the individual and the right of law enforcement officers to perform their necessary duties." *Davis*, 2006 WL 1409761, at *2 (internal quotation marks and quotation omitted). Here, because defendant cannot show extraordinary circumstances overcoming the government's legitimate need to maintain records related to criminal cases, defendant has not shown entitlement to the relief he seeks.

In sum, there is no statutory basis for the proposed expungement of the defendant's arrest, and defendant does not set forth the extraordinary circumstances necessary to meet the narrow exception contemplated by the D.C. Circuit in *Doe v. Webster*, 606 F.2d at 1230. Accordingly, the Court should summarily deny defendant's motion.

## Conclusion

For the aforementioned reasons, neither dismissal of the criminal complaint against the defendant with prejudice nor expungement of the defendant's arrest is warranted.

Respectfully submitted,

JEANNINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:  /s/ Benjamin Helfand
Benjamin Helfand
Assistant United States Attorney
D.C. Bar No. 1658708
601 D Street NW
Washington, D.C. 20052
202-252-7059
Benjamin.Helfand@usdoj.gov